## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

GREGORY MARSHALL                                           CIVIL ACTION

VERSUS                                                          NO. 16-285

JOHNNY HEDGEMON                                      SECTION: "R"(1)


### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Gregory Marshall, is a state prisoner incarcerated at the Winn Correctional Center in Winnfield, Louisiana.  On October 9, 2012, he pleaded guilty to simple burglary of an inhabited dwelling under Louisiana law.[1]  On January 25, 2013, he stipulated to being a second offender and was sentenced as such to a term of twenty-four years imprisonment.[2]

---

[1] State Rec., Vol. 1 of 1, minute entry dated October 9, 2012.
[2] State Rec., Vol. 1 of 1, transcript of January 25, 2013; State Rec., Vol. 1 of 1, minute entry dated January 25, 2013.

On April 24, 2014, petitioner filed an application for post-conviction relief with the state district court.[3] That application was denied on August 1, 2014.[4] The Louisiana First Circuit Court of Appeal then likewise denied relief on January 12, 2015,[5] and the Louisiana Supreme Court Supreme Court subsequently refused to consider his related writ application on the grounds that it was untimely.[6]

On January 4, 2016, petitioner filed the instant federal application seeking habeas corpus relief.[7]  The state has filed a response arguing that the application should be dismissed as untimely.[8]

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a statute of limitations for petitioners seeking federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Specifically, the AEDPA provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

---

[3] State Rec., Vol. 1 of 1.  Federal habeas courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system."  Causey v. Cain, 450 F.3d 601, 607 (5th Cir. 2006).  Because that date cannot be gleaned from the state court record with respect to this *pro se* application, the Court will simply use the signature date of the application as the filing date, in that the application was obviously placed in the mail no earlier than the date it was signed.

[4] State Rec., Vol. 1 of 1, Order dated August 1, 2014.

[5] Louisiana v. Marshall, No. 2014 KW 1682 (La. App. 1st Cir. Jan. 12, 2015); State Rec., Vol. 1 of 1.

[6] State *ex rel.* Marshall v. State, No. 2015-KH-0522 (La. Dec. 7, 2015); State Rec., Vol. 1 of 1.

[7] Rec. Doc. 7.  "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court."  Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003).  Petitioner has declared under penalty of perjury that he placed his application in the prison mailing system on January 4, 2016.  Rec. Doc. 7, p. 1.

[8] Rec. Doc. 16.

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Presumably attempting to invoke Subsection (B), petitioner argues that the state's failure to provide him with copies of transcripts impeded his ability to seek relief in a timely manner. The state counters that petitioner's argument is meritless. The state is correct, in that federal courts have repeatedly held that problems associated with obtaining transcripts and trial records do not amount to "state-created impediments" triggering Subsection (B). See, e.g., Pitre v. Cain, Civ. Action No. 6:15-cv-2438, 2016 WL 1371206, at *6-7 (W.D. La. Jan. 21, 2016), adopted, 2016 WL 1367300 (W.D. La. Apr. 4, 2016); Cook v. Cain, Civ. Action No. 15-1882, 2015 WL 6702290, at *2 (E.D. La. Nov. 3, 2015); Crain v. Director, TDCJ-CID, Civ. Action No. 6:11cv214, 2012 WL 651730, at *3 (E.D. Tex. Feb. 27, 2012); Plummer v. Mississippi Department of Corrections, Civ. Action No. 4:11cv6, 2011 WL 6965656, at *4 (S.D. Miss. Dec. 16, 2011), adopted, 2012 WL 70349 (S.D. Miss. Jan. 9, 2012).

Regarding Subsection (B), the United States Fifth Circuit Court of Appeals has explained: "In order to invoke § 2244(d)(1)(B), the prisoner must show that: (1) he was *prevented* from filing a petition (2) by State action (3) *in violation of the Constitution or federal law*." Egerton v. Cockrell, 334 F.3d 433, 436 (5th Cir. 2003) (emphasis added); accord Wickware v. Thaler, 404 Fed. App'x 856, 862 (5th Cir. 2010) (A petitioner "can only prevail in applying § 2244(d)(1)(B) by showing that the state's actions were so egregious as to constitute *a violation of the United*

*States Constitution.*" (emphasis added)).  In this case, petitioner's argument that Subsection (B) applies fails for two reasons:  the state court's failure to provide him with transcripts neither violated the federal Constitution nor "prevented" him from seeking relief.

As an initial matter, it must be noted that the United States Constitution does not automatically require that a prisoner be provided upon request with a free copy of a transcript for the purposes of seeking collateral review. See, e.g., United States v. MacCollom, 426 U.S. 317, 323-24 (1976); Deem v. Devasto, 140 Fed. App'x 574, 575 (5th Cir. 2005); Crawford v. Costello, 27 Fed. App'x 57, 59 (2nd Cir. 2001) ("Under 28 U.S.C. § 2244(d)(1)(B), the statute of limitations may be tolled during the time that a state-created unconstitutional impediment prevents the petitioner from filing a petition. Because there is no constitutional right to a trial transcript for collateral appeals, the state's denial of his request for a transcript did not constitute an unconstitutional impediment sufficient to toll the statute of limitations.").

Further, in any event, the state-court delays in providing petitioner with copies of transcripts in no way "prevented" him from seeking relief.  He was present in court and, therefore, aware of the alleged defects in the proceedings.  Accordingly, *even without copies of the transcripts*, he could have filed a state post-conviction application asserting the instant claims.  See Brown v. Cain, 112 F. Supp. 2d 585, 587 n.2 (E.D. La.) ("Because an inmate does not have an automatic right to free transcripts, the Louisiana State Courts accept post-conviction relief applications without transcripts attached."), aff'd, 239 F.3d 365 (5th Cir. 2000); State *ex rel.* Bernard v. Criminal District Court Section "J," 653 So.2d 1174, 1175 (La. 1995) (holding that a prisoner who has "identified with factual specificity … constitutional claims he argues will entitle him to post conviction relief" may "file an application which lacks any supporting documentation without fear of summary dismissal under La.C.Cr.P. art. 926(E).").  Upon filing such an

application "identif[ying] specific constitutional errors in the proceedings leading to his conviction and sentence," he would then have been entitled to a free copy of the transcripts under state law simply by showing a "particularized need" for them, i.e. by demonstrating that they were necessary to resolve his claims fairly.  Bernard, 653 So.2d at 1175.  **Further, while those proceedings were pending in the state courts, petitioner could also have timely filed a protective federal habeas corpus petition and asked that the federal proceedings be stayed while he pursued his state-court remedies**.  See, e.g., Pace v. DiGuglielmo, 544 U.S. 408, 416-17 (2005); Madden v. Thaler, 521 Fed. App'x 316, 321 (5th Cir. 2013); Cook v. Cain, Civ. Action No. 15-1882, 2015 WL 6702290, at *3 (E.D. La. Nov. 3, 2015).  As a result, the state-court delays in providing the transcript in no way "prevented" petitioner from seeking relief.

Petitioner additionally argues that he was faced with another state-created impediment, namely the absence of an adequate law library at the Riverbend Detention Center.  It is true that, in some circumstances, that "an inadequate prison law library may constitute a state created impediment" for purposes of Subsection (B).  Egerton v. Cockrell, 334 F.3d 433, 439 (5th Cir. 2003).  However, "[w]hether a prisoner has demonstrated the existence of a state-created impediment is highly fact dependent."  Funk v. Thaler, 390 Fed. App'x 409, 410 (5th Cir. 2010).

Because petitioner's original allegations that he was prevented from timely seeking relief due to a lack of access to an adequate law library were impermissibly vague, the Court gave him an opportunity to develop the relevant facts supporting his contention.  See Thames v. Wilson, 179 Fed. App'x 241, 242 (5th Cir. 2006).  Specifically, the Court issued an Order directing him to supplement his federal application with a sworn affidavit including the following information:

1.  A statement detailing approximately when petitioner arrived at the Riverbend Detention Center and when he was transferred from that facility.

2.  A statement as to whether a law library or legal assistance program was available **at all** at the Riverbend Detention Center.

3.  If a law library or legal assistance program **was** available, an explanation as to (a) what resources were available, (b) the respects in which those resources were inadequate, and (c) precisely how those inadequacies **prevented** petitioner from seeking relief in a timely fashion.

4.  A statement as to what legal assistance petitioner requested, approximately when and to whom the requests were made, and the response[s] he received to those requests.[9]

In response, petitioner submitted an affidavit in which he stated in pertinent part:

2.  Petitioner Marshall states for the record that he was housed at Riverbend Correctional Center from February 25, 2013 until July 10, 2015 when he was transferred to Claiborne Detention Center.

3.  (a) Petitioner would like to take this opportunity to state for the record that at Riverbend Correctional there was no **Certified Offender Counsel Substitutes** within the facility at all.  There was a closet size area where they had a few out of date books.  (b)  There were no regular call-outs in order to afford an offender an opportunity to research legal work, or to order cases, or to get any motions prepared.  The facility chose an offender at random to stay in the area to answer questions.  (c) Please understand that Riverbend Detention Center is referred to as a Satellite Camp within the institutional set-up of facilities; all they do is warehouse offenders until they are sent to a state prison facility or go home.  That place did not care about the concerns of offenders legal issues.  The offender in that closet area was to pacify people, not help them.

4.  Petitioner made numerous request asking to be afforded an opportunity to get help on his case.  The only way to get access to the area was to ask permission from someone who had authority to let you go there, petitioner ask Capt. Russell on several different occasions.  The most important materials requested were for cases/material relating to my case, and motions requesting documents pertaining to my case.  Please understand that nothing from that facility was ever done to help me facilitate my case.  At this facility, "Rayburn Correctional Center" Certified Offender Counsel Substitutes are available to help me.

    The Louisiana Legislature has mandated than an offender must have an opportunity to consult Certified Offender Counsel Substitutes on his Post-Conviction Relief.  The Department of Public Safety & Corrections has initiated an aggressive program to provide the help needed to offenders trying to resolve legal issues.

---

[9] Rec. Doc. 17.

Riverbend Correctional had no such program.[10]

Based on the evidence presented, the Court must determine whether the situation petitioner describes falls within Egerton so that petitioner is entitled to a delayed commencement of the statute of limitations pursuant to 28 U.S.C. § 2244(d)(1)(B).  For the following reasons, the undersigned finds that it does not.

Since 2003, when the United States Fifth Circuit Court of Appeals first ruled in Egerton that an inadequate prison law library may constitute a state-created impediment for purposes of Subsection B, courts have struggled with the intended scope of that decision.  For the most part, courts have determined that Egerton was an unusual case based on egregious facts and, therefore, its scope was limited.  For example, one court observed:

> In making that ruling [in Egerton], the Court stopped short of permitting a dearth of research material to excuse every late filing, concluding, "an inadequate prison law library *may* constitute a state created impediment that would toll the AEDPA's one-year limitations period pursuant to § 2244(d)(1)(B)."  [Egerton, 334 F.3d] at 439 (emphasis added).  In Egerton, no copy of the AEDPA was available in the prison, but the prisoner promptly filed his state, and then his federal, habeas petitions after being moved to a facility with an adequate law library.  As the district court stated in Neal v. Bradley, Civil Action No. 2:05cv67, 2006 WL 2796404 at *2 (N.D. Miss., Sept. 25, 2006), the rule adopted in Egerton is "extremely circumscribed," and inmates are attempting to expand its holding far beyond the narrow set of facts to which it applies.  Egerton was incarcerated prior to 1996, and was unaware of AEDPA's passage; and since his facility had no copy of the AEDPA, he had no way of learning of its passage until after the limitations period had run.  Id. at *3.

Madison v. Scott, Civ. Action No. 11-cv-00243, 2011 WL 7561510, at *3 (Miss. S.D. Aug. 4, 2011), adopted, 2012 WL 930932 (S.D. Miss. Mar. 19, 2012); accord Coleman v. Warden Louisiana State Penitentiary, Civ. Action No. 04-0494, 2007 WL 2350270, at *3 (W.D. La. July 23, 2007) ("The holding in Egerton has been described as 'extremely circumscribed' and not subject to expansion far beyond the narrow and unusual set of facts presented in that case.")

---

[10] Rec. Doc. 20-1, p.1.

(adopted by Hicks, J., on August 15, 2007).  Another court observed:  "Now that the AEDPA has

been in effect for over a decade, it is unlikely that a prisoner could successfully rely upon Egerton,

which was fact-specific to a prisoner dealing with a new law and no copy of the statute."  Romero

v. Thaler, No. 2:10-CV-075, 2010 WL 2366025, at *3 (N.D. Tex. May 25, 2010), adopted, 2010

WL 2366033 (N.D. Tex. June 11, 2010).

Moreover, in 2011, the United States Fifth Circuit Court of Appeals revisited Egerton and

noted the difficulty of falling within the narrow scope of that opinion:

> To invoke tolling under § 2244(d)(1)(B), [a petitioner] "must show that:  (1) he was
> prevented from filing a petition (2) by State action (3) in violation of the
> Constitution or federal law."  Egerton v. Cockrell, 334 F.3d 433, 436 (5th Cir.
> 2003).
> To prevail, [a petitioner] must allege more than that the library was
> inadequate.  The Supreme Court has stated:
>
>> an inmate cannot establish relevant actual injury simply by
>> establishing that his prison's law library or legal assistance program
>> is subpar in some theoretical sense ....  [T]he inmate must go one
>> step further and demonstrate that the alleged shortcomings in the
>> library or legal assistance program hindered his efforts to pursue a
>> legal claim.
>
> Lewis v. Casey, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (noting
> that there is no "abstract, freestanding right to a law library or legal assistance");
> see also Miller v. Marr, 141 F.3d 976, 978 (10th Cir. 1998) ("It is not enough to
> say that the Minnesota facility lacked all relevant statutes and case law or that the
> procedure to request specific materials was inadequate.").  Rather, he must also
> show that the lack of adequate legal materials actually *prevented* him from timely
> filing his habeas petition.  See Felder [v. Johnson], 204 F.3d [168,] 171 n. 9 (5th
> Cir. 2000) (holding that where a prisoner filed his habeas petition before he had
> access to AEDPA, the lack of access to AEDPA was not an did not prevent him
> from filing an application); see also Balawajder v. Johnson, 252 F.3d 1357, 2001
> WL 422873, at *1 (5th Cir. 2001) (unpublished) (holding that absence of AEDPA
> from prison library was not an impediment where the record reflected the prisoner's
> actual awareness of AEDPA before the tolling period expired); cf. Egerton, 334
> F.3d at 435 (noting that the court remanded on the issue of "whether [the prisoner]
> was aware of the existence of AEDPA prior to the expiration of the limitations
> period").

Krause v. Thaler, 637 F.3d 558, 560-61 (5th Cir. 2011).

As a preliminary matter, the Court notes that the relevant inquiry therefore is ***not*** whether the Riverbend Detention Center had a comprehensive law library or a robust legal assistance program. If that were the test, then there would effectively be ***no*** enforceable statute of limitations in habeas cases because one can safely assume that the vast majority, if not all, of the parish and state penal facilities in Louisiana have limited law libraries and/or legal assistance services. Rather, the inquiry is ***only*** whether a petitioner has shown that the deficiencies actually ***"prevented"*** him from seeking relief in a timely manner.

The Court also notes that petitioner's contention that he was denied access to legal materials or assistance is rendered somewhat suspect by the fact that he submitted no grievances concerning that purported denial. The state has submitted evidence establishing that the Riverbend Detention Center had an administrative grievance procedure in place for inmates to file complaints but that petitioner never submitted a complaint alleging that he was being denied access to an adequate law library or legal assistance at the jail.[11]

In any event, perhaps that the best evidence that petitioner was not "prevented" from seeking judicial relief as a result of any purported deficiencies in the law library or legal assistance program at the Riverbend Detention Center is the fact that the state court record shows that he actually sought such relief on numerous occasions. For example, while incarcerated at that facility, petitioner filed with the state district court motions for transcripts on July 15, 2013, and January 30, 2014,[12] an application for post-conviction relief on April 24, 2014,[13] a motion for a rule to show cause on May 6, 2014,[14] and a notice of intent to seek writs and motion for return date in

---

[11] Rec. Doc. 21-1.
[12] State Rec., Vol. 1 of 1.
[13] Id.
[14] Id.

July of 2014.[15]  During that same period, he also filed a petition for a writ of mandamus with the Louisiana First Circuit Court of Appeal.[16]

In summary, in light of the vagueness of petitioner's allegations concerning the Riverbend Detention Center's law library and legal assistance program, the narrowing of Egerton's scope over the past decade, the fact that there is no record of petitioner having complained about inadequate legal assistance, and, most importantly, his numerous legal filings while at the jail, the undersigned finds that the deficiencies of jail's law library and legal assistance program did not qualify as "state-created impediments" that "prevented" petitioner from seeking relief. Accordingly, Subsection (B) does not apply.

Further, petitioner does not allege that Subsections (C) or (D) of 28 U.S.C. § 2244(d)(1) apply.  Moreover, they obviously do not, in that his claims involve neither a newly recognized constitutional right nor a newly discovered factual predicate.

Accordingly, as the state correctly argues in its response, Subsection (A) applies in this case, and, for the following reasons, petitioner's application is untimely under that subsection.

As noted, under Subsection (A), a petitioner must bring his § 2254 claims within one (1) year of the date on which his underlying criminal judgment becomes "final."  On that point, the United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).  When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court. Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003).  *However, "[i]f the defendant stops the appeal process before that point," ... "the conviction becomes final when the time for seeking further direct review in the state court expires." Id.*

---

[15] Id.

[16] Id.

> *at 694; see also Foreman v. Dretke, 383 F.3d 336, 338 (5th Cir. 2004) (Section 2244(d)(1)(A) gives alternative routes for finalizing a conviction: either direct review is completed or the time to pursue direct review expires).*
>
> *Although federal, not state, law determines when a judgment is final for federal habeas purposes, a necessary part of the finality inquiry is determining whether the petitioner is still able to seek further direct review. See Foreman, 383 F.3d at 338-39. As a result, this court looks to state law in determining how long a prisoner has to file a direct appeal. See Causey v. Cain, 450 F.3d 601, 606 (5th Cir. 2006); Roberts, 319 F.3d at 693.*

Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008) (emphasis added).

Petitioner was sentenced on January 25, 2013. Because he did not file a direct appeal within the thirty days allowed by state law, his state criminal judgment then became final no later February 25, 2013.[17] Accordingly, his period in which to file his federal application for habeas corpus relief commenced on that date and expired one year later on February 25, 2014, unless that deadline was extended through tolling.

The Court first considers statutory tolling. Regarding the statute of limitations, the AEDPA expressly provides: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

During the applicable one-year limitations period in the instant case, the only state motions and applications petitioner filed were those requesting production of the transcripts. However, those filings are of no moment in this federal proceeding. It is clear that applications seeking transcripts or other documents are not considered "application[s] for State post-conviction or other collateral review" for tolling purposes because they are preliminary in nature and do not directly call into question the validity of a petitioner's conviction or sentence. Higginbotham v. Tanner,

---

[17] Under Louisiana law, a criminal defendant has thirty days to file a motion to appeal his conviction or sentence. La.Code Crim. P. art. 914. Because the thirtieth day here fell on a Sunday, petitioner had until Monday, February 25, 2013, to file an appeal. See La. Code Crim. P. art. 13; La. Rev. Stat. Ann. § 1:55.

Civ. Action No. 10-1130, 2011 WL 3268128, at *1 (E.D. La. July 29, 2011); Parker v. Cain, Civ. Action No. 02-0250, 2002 WL 922383, at *2 n.22 (E.D. La. May 1, 2002), certificate of appealability denied, No. 03-30107 (5th Cir. June 23, 2003);  Boyd v. Ward, Civ. Action No. 01-493, 2001 WL 533221, at *4 (E.D. La. May 15, 2001), certificate of appealability denied, No. 01-30651 (5th Cir. Aug. 22, 2001).  Therefore, petitioner is not entitled to statutory tolling.[18]

The Court must next consider equitable tolling.  The United States Supreme Court has expressly held that the AEDPA's statute of limitations is subject to equitable tolling.  Holland v. Florida, 560 U.S. 631, 645 (2010).  However, "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  Id. at 649 (internal quotation marks omitted); accord Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in rare and exceptional circumstances").  A petitioner bears the burden of proof to establish entitlement to equitable tolling.  Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002).

Here, to the extent that petitioner is perhaps arguing that he is entitled to equitable tolling based on the delays in obtaining a copy of the transcript, any such argument has no merit.  Brown v. Cain, 112 F. Supp. 2d 585, 586-87 (E.D. La.), aff'd, 239 F.3d 365 (5th Cir. 2000); see also Cook v. Cain, Civ. Action No. 15-1882, 2015 WL 6702290, at *5 (E.D. La. Nov. 3, 2015); Plummer v. Mississippi Department of Corrections, Civ. Action No. 4:11cv6, 2011 WL 6965656, at *5 (S.D. Miss. Dec. 16, 2011), adopted, 2012 WL 70349 (S.D. Miss. Jan. 9, 2012).  Moreover, petitioner

---

[18] Although petitioner later filed a post-conviction application on April 24, 2014, it is clear that an application filed after the expiration of the federal statute of limitations has no bearing on the timeliness of a federal application.  See Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000); Magee v. Cain, Civ. Action No. 99-3867, 2000 WL 1023423, at *4, aff'd, 253 F.3d 702 (5th Cir. 2001); Williams v. Cain, Civ. Action No. 00-536, 2000 WL 863132, at *2 (E.D. La. June 27, 2000).  Simply put, once the federal limitations period has expired, "[t]here [i]s nothing to toll."  Butler, 533 F.3d at 318.

has brought forth no evidence demonstrating that he is entitled to such tolling on any other basis, and this Court knows of no reason that would support equitable tolling of the statute of limitations.

The Court also notes that the United States Supreme Court recently held: "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar ... or, as in this case, expiration of the statute of limitations." McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013). That said, the Supreme Court took care to note: "We caution, however, that tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" McQuiggin, 133 S. Ct. at 1928 (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995). By entering his unconditional plea, petitioner has already conceded under oath that he in fact committed and was guilty of the crime of which he stands convicted. Further, even if McQuiggin applies in the context of a guilty plea, petitioner has not made a colorable showing that he is actually innocent in light of "new evidence."

Because petitioner is not entitled to statutory tolling, and because he has not established that he is eligible for equitable tolling or that the McQuiggin "actual innocence" exception applies, his federal application for habeas corpus relief had to be filed no later than February 25, 2014, in order to be timely. His federal application was not filed until on or after January 4, 2016, and, therefore, it is untimely.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Gregory Marshall be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); see Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this fourth day of November, 2016.


**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**